In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00099-CR
______________________________


THE STATE OF TEXAS, Appellant
Â 
V.
Â 
CODY DALE LAWLER, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court
Lamar County, Texas
Trial Court No. 48105


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â The trial court granted Cody Dale Lawler's motion to suppress the evidence obtained from
Texas Department of Public Safety Trooper Thomas Anderson's traffic stop of Lawler October 9,
2004. The State intended to use that evidence to prosecute Lawler for misdemeanor driving while
intoxicated with an open alcoholic beverage container. On appeal, in what is effectively a challenge
to the sufficiency of the evidence, the State argues the trial court erred in suppressing the evidence
because Anderson had reasonable suspicion for the stop. We affirm.
Under the Fourth Amendment, a temporary detention is justified when the detaining
officer has specific articulable facts which, taken together with rational inferences
from those facts, lead the officer to conclude that the person detained is, has been, or
soon will be engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 30, 20 L.Ed.2d
889, 88 S.Ct. 1868 (1968). These facts must amount to more than a mere hunch or
suspicion. Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).
Â 
The factual basis for stopping a vehicle need not arise from the officer's personal
observation, but may be supplied by information acquired from another person. 
Adams v. Williams, 407 U.S. 143, 147, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972). For
example, in Armendariz v. State, we held that a stop based on facts observed by an
undercover officer and transmitted by radio to a deputy sheriff did not violate the
Fourth Amendment. 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541
U.S. 974 (2004).

Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).
Â Â Â Â Â Â Â Â Â Â Â Â At the hearing on Lawler's motion to suppress, the trial court heard testimony from 
Anderson. Anderson first recounted the radio report from Deputy Donald Parks that Parks suspected
Lawler was intoxicated because as Lawler drove his vehicle it wove from lane to lane and was
traveling very slowly. Then Anderson recounted his personal observations that Lawler's vehicle was
traveling very slowly, was "weaving within" its lane of traffic, and committed approximately one
quarter of his vehicle into the adjoining lane before signaling that lane change. The in-car videotape
taken from Anderson's car, while he briefly followed Lawler's car, was admitted into evidence and
viewed repeatedly by the trial court. After finding from the bench that Lawler had signaled his lane
change before his vehicle actually began crossing the line between the lanes and stating the court's
inability to see any weaving by Lawler's vehicle, the trial court suppressed the evidence obtained
from the stop.
Â Â Â Â Â Â Â Â Â Â Â Â In reviewing a motion to suppress, we give great deference to the trial court's findings of
historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo
mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. Id. 
And we will sustain the trial court's ruling if the ruling is reasonably supported by the record and
correct on any theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex.
Crim. App. 2002).
Â Â Â Â Â Â Â Â Â Â Â Â The ruling of the trial court is reasonably supported by the record. We affirm the judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â October 28, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â October 31, 2005

Do Not Publish



 a noncapital trial. Sims v. State, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008). Evidence is
"relevant to sentencing," within the meaning of the statute, if the evidence is "helpful to the jury in
determining the appropriate sentence for a particular defendant in a particular case." Rodriguez v.
State, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006).

 The length and breadth of admissible evidence at a punishment trial is illustrated in
Rodriguez. Rodriguez was convicted as a party to an escape when he assisted his son in escaping
from prison together with six other prisoners, who then went on a well-publicized crime spree
including several armed robberies and murder. At the punishment hearing, the State sought to
introduce evidence of all the crimes the escapees, known as the Connally Seven, committed after
escaping and their entire criminal records. Id. at 840. The Texas Court of Criminal Appeals found
that this evidence was admissible during the punishment phase even though Rodriguez was not
criminally responsible for the crimes the group committed after the escape. Reciting that
admissibility of evidence at a punishment trial is a function of policy rather than relevance, the
Texas Court of Criminal Appeals found such evidence to be admissible and that the evidence was
not unfairly prejudicial per Rule 403 of the Texas Rules of Evidence. The court found this evidence
was probative concerning Rodriguez' moral blameworthiness for not assisting the police in the
recapture of the escapees. Id. at 843. 

 Here, the trial court admitted Rogers' testimony without elaborating on the basis of its
decision. We find the evidence in question is relevant to at least two areas listed within the statute. 
The action of Campbell was an extension of his conduct on April 5, 2006, when the evidence shows
he intentionally fled from persons he knew were peace officers attempting to lawfully arrest him,
violating Section 38.04 of the Texas Penal Code. (4) Additionally, the evidence is relevant to show the
prior "bad act" of fleeing from justice for a period of over two years, so long as the State was able
to prove this evidence "beyond a reasonable doubt" or to otherwise show that Campbell "could be
held criminally responsible, regardless of whether he has previously been charged with or finally
convicted of the crime or act." (5) Rogers' testimony on this issue was uncontested, and such proof 
was sufficient to convince a rational juror beyond a reasonable doubt that Campbell did, in fact, flee
from the officers attempting to arrest him and that he did, in fact, remain a fugitive from justice for
over two years before he was finally apprehended. (6) 

 Second, this testimony impacts negatively on Campbell's character as it is evidence of an 
abject lack of respect for lawful authority. (7) Just as in Rodriguez, Campbell's evasion of law
enforcement efforts to arrest him was relevant in considering his moral blameworthiness. The trial
court could have reasonably concluded that such evidence would be helpful to the jury in
determining the appropriate sentence for Campbell in this case. Beyond these two bases for
admission, the statute clearly states that the court "may admit any evidence it deems relevant to
sentencing, including but not limited to . . . ." (8) This standard for admission of evidence in a
punishment trial is extremely broad.


 B. Probative Value Versus Prejudicial Impact

 Next, we must determine whether admission of the subject testimony constitutes an abuse
of discretion under Rule 403 of the Texas Rules of Evidence. Relevant evidence is generally
admissible, but it is properly excluded under Rule 403 when "its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence." (9) Rule 403 of the
Texas Rules of Evidence favors the admission of relevant evidence and carries a presumption that
relevant evidence will be more probative than prejudicial. Jones v. State, 944 S.W.2d 642, 652 
(Tex. Crim. App. 1996); Montgomery, 810 S.W.2d at 390. "'[U]nfair prejudice' refers to 'an undue
tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional
one.'" Erazo, 144 S.W.3d at 501-02 (quoting Rogers v. State, 991 S.W.2d 263, 266 (Tex. Crim.
App. 1999)).

 It is a given that all testimony and evidence will be prejudicial to one party or the other. See
Joiner v. State, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992). It is only when there is a clear
disparity between the degree of prejudice of the offered evidence and its probative value that Rule
403 is applicable. Jones, 944 S.W.2d at 653.

 Rogers' testimony regarding Campbell's fugitive status and the extraordinary effort expended
by law enforcement to apprehend Campbell was not so prejudicial as to require exclusion. Had
Campbell allowed himself to be arrested, then made bond, gotten a job, and generally stayed clear
of trouble until his trial, he would have necessarily been permitted to bring such evidence to the jury
at the punishment phase of trial, as it is relevant to character and would be helpful to the jury in
determining the appropriate sentence. Likewise, the jury is permitted to hear evidence that Campbell
attempted to frustrate prosecution, refused to return and face charges, or to permit himself to be
arrested. This information is helpful to the jury in its determination of an appropriate sentence. 

 The unusual feature in this case is that the television program "America's Most Wanted"
featured a segment on Campbell. (10) The entirety of Rogers' testimony was brief, and her testimony
regarding the feature on "America's Most Wanted" amounted to only one sentence. There was no
attempt by the State in its questioning of Rogers to utilize this aspect of the evidence in a
sensationalistic or shocking manner.

 There is no clear disparity between the probative value of the evidence introduced against
Campbell at the punishment phase of the trial and the danger of unfair prejudice to Campbell. We
analyze four factors in conducting the Rule 403 balancing test: (11)
 (1) how compellingly the evidence
serves to make a fact of consequence more or less probable--the evidence of Campbell's continued
flight to avoid prosecution was relevant and probative as to Campbell's moral blameworthiness and
was helpful to the jury in determining the appropriate punishment; (2) the potential to impress the
jury on some irrational basis--here the evidence was not an appeal to improper emotion or a 
confusion of the issues; (3) the time needed to develop the evidence--the testimony of Rogers was
very brief, consisting of less than four typed pages in the record, and (4) the force of the proponent's
need for the evidence--the evidence was not cumulative of any other evidence admitted in the
punishment trial. While the evidence was necessarily prejudicial to Campbell, it was not unfairly
so. 

IV. CONCLUSION

 The trial court did not err by admitting testimony during Campbell's punishment trial that
Campbell not only evaded capture by law enforcement at the time of the attempted arrest, but that
he also continued to flee from justice for over a period of two years, causing numerous law
enforcement agencies to assist in the effort to bring him to justice. The probative value of this
evidence was not substantially outweighed by any unfair prejudice resulting from its admission. The
trial court did not abuse its discretion by admitting this evidence. 








 We affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: September 30, 2009

Date Decided: October 28, 2009


Do Not Publish
1. Assault Â Â on Â Â a Â Â public Â Â servant Â Â is Â Â a Â Â third Â Â degree Â Â felony. Â Â See Â Â Tex. Â Penal Â Â Code
Â Ann. § 22.01(a)(1), (b)(1) (Vernon Supp. 2009). Campbell's punishment was enhanced to that of
a second degree felony based on a prior felony conviction. Punishment for a second degree felony
is imprisonment in the Texas Department of Criminal Justice for any term of not more than twenty
years Â or Â less Â than Â two Â years, Â plus Â a Â fine Â not Â to Â exceed Â $10,000.00. Â Tex. Â Penal Â Code Â Ann.
Â§ 12.33(a), (b) (Vernon Supp. 2009).
2. McGee v. State, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007) (citing Erazo v. State, 144
S.W.3d 487, 491 (Tex. Crim. App. 2004)). 
3. Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a)(1). 
4. See Tex. Penal Code Ann. Â§ 38.04 (Vernon Supp. 2009).
5. Rodriguez, 203 S.W.3d at 843.
6. We note that evidence of flight was admitted during the guilt/innocence phase of the trial
(although there was no evidence of the two-year time span Campbell evaded arrest). Evidence of
flight is admissible in that context because flight is a circumstance from which guilt may be inferred. 
Foster v. State, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989). Such evidence is also relevant "to
show the efforts made to locate or apprehend the accused, his pursuit and capture, including his
resistance to arrest when overtaken." Hunter v. State, 530 S.W.2d 573, 575 (Tex. Crim. App. 1975).
The jury properly considers guilt/innocence evidence during the punishment trial. Burks v. State,
227 S.W.3d 138, 152 (Tex. App.-- Houston [1st Dist.] 2006, pet. ref'd).
7. Character evidence in the form of opinion testimony and extraneous-offense evidence are
admissible at the punishment phase of trial. Tex. Code Crim. Proc. Ann. art. 37.07; Sims, 273
S.W.3d at 296. Specific instances of conduct of the person from which inferences may be drawn is
one form of character evidence. Hedicke v. State, 779 S.W.2d 837, 839 (Tex. Crim. App. 1989). 
8. Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a)(1) (emphasis added).
9. Tex. R. Evid. 403.
10. The issue of pretrial publicity was addressed during voir dire. Only one potential juror had
heard anything about the case, and this juror was excused. One other venire member knew Campbell
from school, and this juror was also excused. 
11. De La Paz v. State, 279 S.W.3d 336, 348-49 (Tex. Crim. App. 2009).